No. 3338

**Second Circuit**

STEWART BROS. COTTON CO., INC., v. DUFILHO

(April 9, 1931. Opinion and Decree.)

Barksdale, Bullock, Warren, Clark & Van Hook, of Shreveport, attorneys for plaintiff, appellee.

Albert P. Garland, of Shreveport, attorney for defendant, appellant.

DREW, J. Plaintiff sued for the sum of $1,781.10, with legal interest thereon from judicial demand, alleging that in the months of August and September, 1926, it bought from defendant 500 bales of cotton at prices fixed at the time of purchase, defendant to be responsible in respect to the grade and staple of the said cotton according to its outturn in the city of New Orleans, Louisiana, indemnifying plaintiff against any difference in this respect between the said cotton as billed out by defendant, and plaintiff indemnifying and making good to defendant any excess due the said defendant in this respect, over the amount at which the said cotton was billed.

That in the months of September and October, 1926, the 500 bales of cotton were shipped by defendant to plaintiff and invoiced at the aggregate sum of $41,557.98, which sum was paid by plaintiff; but the New Orleans outturn of said cotton in respect to the grade and staple, amounted to the sum of $39,911.68, leaving a difference due plaintiff by the defendant of $1,646.30. It further alleged that under the direction of defendant, plaintiff incurred an expense of $134.80 in having 337 bales of cotton classed by the New Orleans Cotton Exchange, which amount was due plaintiff by the defendant. It prays for judgment accordingly.

Defendant admits the contract, as alleged by plaintiff, but alleges that the staple of such cotton was to be based on types furnished him by plaintiff. He admits the shipment of 500 bales of cotton invoiced at the sum of $41,557.98, and affirmatively alleges that the purported New Orleans outturn on said cotton was not based on staple types of plaintiff, according to the agreement between him and plaintiff, but on government and New Orleans Cotton Exchange staple types, which are different from plaintiff's types. That his invoices were based on staple types furnished him by plaintiff as a basis for the classification of said cotton under the contract entered into between them, and that the classification of the grade of the cotton made by him was correct, and that made for plaintiff was incorrect. He further denies that he is responsible for the charges made by the New Orleans Cotton Exchange for the classifying of said cotton and prays that plaintiff's demands be rejected.

There was judgment in the lower court in favor of plaintiff for the amount of $1,646.30, the alleged difference between the sum paid defendant and the outturn of the cotton in New Orleans, and rejecting plaintiff's demands for the $134.80, paid by it to the New Orleans Cotton Exchange for classification of the said cotton. From this judgment defendant in open court asked for orders of suspensive appeal to this court, and same were granted upon defendant's furnishing bond in accordance with the law and made returnable on May 21, 1928.

The judgment of the lower court was signed on April 18, 1928, and on the same day bond in the sum of $2500 was executed, with Mrs. Miriam Conway Dufilho as surety, and filed with the clerk of the district court. The case was returned into this court on May 21, 1928. On May 9, 1928, plaintiff served notice on defendant that it objected to the suspensive appeal bond filed by him for the reason that the amount of the bond was insufficient and the surety thereon pecuniarily insufficient and without capacity to bind herself as surety thereon for the obligation of her husband. That plaintiff would test the

sufficiency of said bond as to the amount, and the solvency, sufficiency and capacity of said surety. Defendant failed to furnish another bond, and on May 22, 1928, one day after the appeal had been returned into this court, plaintiff and appellee filed a motion to dismiss the appeal for the reasons set out in the notice served upon defendant, alleging service of said notice, and attaching copy of same, together with a certificate of the clerk of the district court that no additional or supplemental bond had been filed by defendant. The motion to dismiss was ordered by this court to be placed on the preference docket, but was never tried until the hearing herein on the merits.

On May 26, 1928, plaintiff filed in the lower court a rule to show cause why execution should not issue on the judgment, alleging the facts above set forth, attacked the bond, and prayed for the issuance of a fieri facias, and that the appeal bond be declared invalid. The rule was made returnable on May 30th, at 2 p. m., at which time there was no appearance by defendant or his counsel, and the rule was duly tried and made absolute. The appeal bond was declared to be invalid and ineffective, and the clerk was ordered to issue a fieri facias on the judgment.

After execution issued, the defendant paid the judgment in full, and on June 16, 1928, had the judgment canceled on the mortgage records of Caddo parish, Louisiana.

On February 1, 1929, defendant petitioned for a devolutive appeal from the original judgment, which order was granted, fixing the appeal bond at $50, and making the return day February 25, 1929. The bond was filed on February 5, 1929, and on February 23, 1929, the defendant presented a motion to this court setting out that he had taken a devolutive appeal and was filing a supplemental transcript showing all proceedings had in the lower court since the record was lodged in this court under his suspensive appeal, and prayed for orders allowing him to prosecute his devolutive appeal on the original and supplemental transcript. The motion and supplemental transcript were ordered filed under the number and as part of the original record.

On February 28, 1931, plaintiff, appellee, filed a motion to dismiss the devolutive appeal, setting out all the facts above stated, and alleging that defendant's acts constituted an abandonment of the suspensive appeal, and that he no longer had a right to a devolutive appeal.

The motion to dismiss presents an interesting question and one on which the jurisprudence of this state is apparently greatly in conflict. However, since our finding on the merits is that the judgment of the lower court is correct, we prefer to base our decision on the merits alone.

Plaintiff and defendant are in full accord as to what the contract was in most respects—that is, that in the months of August and September, 1926, plaintiff bought from defendant 500 bales of cotton, at prices fixed at the time of purchase, the defendant to be responsible in respect to the grade and staple of said cotton, according to its outturn in the city of New Orleans, Louisiana, defendant indemnifying plaintiff against any difference in this respect between the said cotton as billed out by defendant, and plaintiff indemnifying and making good to defendant any excess due said defendant in this respect over the amount at which the said cotton was billed. They are in full accord as to the amount received by defendant

for the cotton, to-wit: $41,557.98, and there is no dispute as to the amount of the outturn of the cotton at New Orleans, to-wit: $39,911.68. The one thing of which defendant complains is that the outturn in New Orleans was based upon government and New Orleans Cotton Exchange staple types and not upon staple types of plaintiff. That he sold upon private staple types of plaintiff furnished him by plaintiff and not on government or New Orleans Cotton Exchange types. That the cotton he sold plaintiff was properly classed according to types furnished him by plaintiff; and that plaintiff has failed to prove its claim because it has failed to show that the outturn was based upon the types furnished him, defendant, by plaintiff as a basis for classification.

There is no dispute over the weights given the cotton in New Orleans, neither does there seem to be any discord over seven bales of cotton that were rejected in New Orleans and afterwards sold by plaintiff for defendant's account at a much lower price and without complaint from defendant.

Defendant complains greatly of the ruling of the trial judge on the admissibility of certain documents offered by plaintiff and others offered by defendant. Without going into a detailed discussion of the lower court's ruling, we find his ruling on the admissibility and non-admissibility of evidence correct. Plaintiff in proper form by deposition took the testimony of witnesses in New Orleans, and each and every document offered by it was verified by these witnesses and its correctness sworn to. On the other hand, defendant attempted to file in evidence certain documents that were not verified by any witnesses, and the testimony of the persons making the documents or having knowledge of their correctness was not offered in open court, or any attempt made to take their testimony by deposition, and no opportunity given plaintiff to cross-examine the makers of the documents or the person having knowledge of their correctness.

The record shows that the cotton was classed in New Orleans by the following classers:

By New Orleans Joint Southern Arbitration Board .................................................... 343
By U. S. Government Classers ................. 133
By Plaintiff's Classers ............................... 24

Total ............................................................. 500

It is not contended by defendant that this classification is not correct, but he contends that he sold to be classed by plaintiff's special types furnished him by plaintiff, which are different from the classification made by the above classers and that the classification given the cotton by the above classers is worthless as evidence in this case, because they did not use the types by which he sold in classing the cotton.

This is not a suit to enforce the decision of the arbitration board, but the classification made by it, together with the evidence of the classers, is used to show the true classification of the cotton and to show that the grade and staple, as fixed by these classers, was equally if not more favorable to defendant than the classification based on the types furnished him by plaintiff. Defendant does not complain of the grade given the cotton, and only complains of the staple. He contends the types were furnished as to staple. Plaintiff contends they were furnished only to give him "our idea of the length." It is undisputed that in classing the cotton that grade as well as the staple would have to be considered.

The types furnished defendant by plaintiff were described as follows:

| | | |
|---|---|---|
| STEV | | 7/8ths |
| IBHE | Full | 7/8ths |
| FLAX | | 15/16ths |
| ANDA | Inch | |
| PHIL | | 1 1/32nd |

Two of plaintiff's employees, both experienced cotton classers, verified the types above given and testified that the same types as sent defendant were sent to the Joint Southern Arbitration Board to be classed and identify the classification certificate thereon. One of the committee of three of the said board making the classification of these types verifies the certificate. This certificate of classification of plaintiff's types shows:

| | | |
|---|---|---|
| STEV | | 7/8 |
| IBHE | | 15/16 |
| FLAX | Full | 15/16 |
| ANDA | Inch | |
| PHIL | | 1 1/32 |

The Joint Southern Arbitration Board's classification of the types, defendant contends he sold by, agrees with plaintiff's classification as to three types, namely; STEV, PHIL and ANDA, and as to the other two types, IBHE and FLAX, it is in favor of the defendant. IBHE was classed as to staple by plaintiff as 7/8ths and by the board as 15/16ths. FLAX was classed by plaintiff as to staple at 15/16ths, and by the board as 15/16th Full. It is plain to see that the higher classification placed on the two types by the board is in defendant's favor.

Defendant used two local classers who testified to the staple of plaintiff's types, showing that three of his types were of a slightly lower classification than given them by plaintiff, but we think the preponderance of evidence is in favor of the classification given by plaintiff and the board of arbitration and that plaintiff was benefited instead of injured by the classification given his cotton in New Orleans by the arbitration board and the United States government, and regardless of whether he sold by plaintiff's special types or not, his cotton was classed by a standard that gives his cotton a classification in part as high and partly higher than he would have received if classed by the types furnished by plaintiff.

Defendant contends that when he sold the cotton, it was in wet weather, and that cotton will pull longer in wet weather than in dry; and that when it was classed the weather was dry. We would think that the type used would likewise pull longer in wet weather than in dry and that the shrinkage of one would offset the other, and it is not reasonable to think that experienced cotton men would give a standard by which to buy, based on cotton pulled in wet weather, when it is common knowledge that cotton will pull longer in wet weather. Furthermore, the evidence shows that in wet weather allowance is always made for that condition. Furthermore, it is very significant that defendant requested that the arbitration board class his cotton in letters to plaintiff and the board, and now complains of their classification.

The testimony is convincing that plaintiff has made out its case for the difference between the outturn in New Orleans and the amount paid defendant. The cost of classing the cotton by the board was rejected in the lower court, and plaintiff acquiesced in the judgment by executing same and authorizing the cancellation of the judgment. Furthermore, it has not answered the appeal in this court. It is therefore ordered, adjudged and decreed that the judgment of the lower court be affirmed, with all costs.